Kilty, Chancellor.
On motion it is Ordered, that the bill be dismissed as against the defendant Andrew Hall, with costs.
The defendant Sarah, wife of the defendant Alexander, having failed to answer, and having been attached, for not answering; the plaintiffs, by their petition, prayed, that she might be brought before the court, See.

13th July, 1821.

Kilty, Chancellor.—
Ordered, that the sheriff of Baltimore county, bring into court the defendant Sarah Hanna, on the 21st day of the present month, the said Sarah Hanna, being returned by him attached for not answering the bill in this suit, (a)
Soon after the passing of this order, the defendant Sarah, the wife of Alexander, put in her separate answer, in which she ad *29 mitted the conveyance of the property, to the use of herself and her children, was made as set forth in the bill; but she averred, that it was made in consideration of her fortune, amounting to about $5000; that the house on the lot was erected with her money so paid to her husband; that he was in good and solvent circumstances at the time he made the conveyance; and she denied all fraud, &c.
The infant defendants Mary, John, and Robert, answered by their guardian ad litem, and admitted the execution of the conveyance by their father as set forth; but averred, that he was then in solvent circumstances; and prayed that their interests might be protected, See.
The plaintiffs, by their petition, stated, that the defendant Sarah Hanna, Jr. had attained her full age, since the issuing of the commission to take the answers of the infant defendants, and had refused to answer their bill of complaint. Whereupon they prayed process against her, &c.
19¿/¿ JYovember, 1822.
Johnson, Chancellor.
Leave is given to amend the bill, so as it shall appear by the bill, that the person, in this petition mentioned, has arrived at full age; and a subpoena being served on her, if disregarded, the necessary compulsory process will issue.
After which the defendant Sarah Hanna, Jr. put in her answer, in which she admitted the execution of the conveyance by her father, as charged in the bill;. but declared, that he was then solvent, as she had heard and believed; and that she had no knowledge of any other matters set forth in the bill.
The plaintiffs’ solicitor, by an application in writing, prayed, that a commission might issue to take testimony, &c. To which a solicitor, who appeared only for the defendants, Alexander B. Hanna and wife, and Sarah their daughter, subjoined his consent in these words, “the undersigned, as counsel for such of the above defendants as he appears for, consents to the above commission as prayed for by the complainants,” upon which, on the 24th of April, 1823, the Chancellor said “let the commission issue;” and it was issued accordingly.
On the 15th of December, 1823, the plaintiffs, by their petition, stated, that the infant defendant, Andrew Hanna, had returned to this state, and was then a resident of the city of Baltimore, but *30 had not answered. Whereupon they prayed a subpoena against him; which was ordered accordingly.
The infant defendant Andrew Hanna, on the 3d of May, 1824, put in his answer by guardian ad litem, in which he stated, that he had been informed and believed, that his father had executed the conveyance as set forth in the bill; but he averred, that it was made for a valuable consideration, and at a time when he was solvent, &c.
Under the commission which had been issued upon the order of the 24th of April, 1823, the depositions of witnesses were taken, and several instruments had been authenticated, all of which were returned and filed on the 8th of June, 1824; and after the commission had remained on file the time required, the plaintiffs entered on the docket, a rule hearing next term ; and the case was accordingly brought before the court.
18th March, 1825.
Bland, Chancellor.
The counsel for the defendants insisted that the case was not in a situation to have been set down for hearing; and therefore, that the rule hearing was erroneously or improvidently entered upon the docket. And they also objected, that the defendant Sarah, the wife of Alexander, should not have been made to answer separately, but jointly with her husband ; of that, however, the Chancellor deems it unnecessary now to say any thing. It is obvious, that the case is not now ready either for a reference to the auditor, or for a final hearing.
After which, the attention of the court was again called to the case, with a request to reconsider this matter.
28th April, 1825.
Bland, Chancellor.
The Chancellor has again carefully looked over the papers, as requested by the plaintiffs’ solicitor, and finds nothing to remove the objections taken to the manner in which the commission was issued under which the testimony has been taken. It appears that the defendant Andrew Hanna, could not have given his consent to the order of the 24th of April, 1823, either in person or by counsel; and therefore as to him, and as to all the other defendants, not represented by the solicitor who assented to the issuing of that commission, it could only have been issued in the regular mode of conducting adverse proceedings, which was not the case; and consequently, the testimony, as taken, can be of no avail against any but the three defendants, with the consent’ of whose solicitor it was taken, and the case is not in a situation to have the bill taken pro confesso-, against *31 any one but the defendant Burking. Nor does it appear that the exceptions to the answer of the defendant Alexander B. Hanna, have been in any way disposed of.
The plaintiffs, by their petition, filed on the 16th of June, 1825, stated, that the chattel real in controversy had been and then was held by the defendants Alexander B. Hanna and wife; that he was insolvent; and that, anticipating the termination of this suit against them, they had suffered the ground rent to fall greatly in arrear; whereupon, it was prayed, that the property might be put into the hands of a receiver.
A day having been given for the hearing of the matter of this petition, it was answered by the defendants Alexander B. Hanna and wife ; and the solicitors of the parties were heard.
4th October, 1825.
Bland, Chancellor.
A receiver may be appointed against the legal title in a strong case of fraud, combined with danger to the property. In such cases, the court may, on affidavits, interfere before the hearing. But the court interposes by appointing a receiver against the legal title with reluctance. It must not only be morally sure, that, at the hearing, the party would, upon those circumstances, be turned out of possession; but must see some imminent danger to the property and the intermediate rents and profits, from not acting rather prematurely, and if the property should not be taken under the care of the court. It is conceived, that according to these principles, this is not such a case as the Chancellor would be warranted in appointing a receiver. Therefore, it is Ordered, that the petition be dismissed with costs. (b)
After which, the exceptions to the answer of the defendant Alexander B. Hanna, having been sustained, he put in a full answer, as required, on the 22d of March, 1826. Subsequently to which, the plaintiffs, by their petition, prayed for a commission to take evidence, &c.
15th April, 1826.
Bland, Chancellor.
The order of publication having been published as required, warning F. G. L. Burking to appear, and the general replication to the answers of all the other defendants having been put in by the plaintiffs; it is *32 therefore Ordered, that a commission issue as prayed, unless the defendants name and strike commissioners on or before the 30th instant.
After which, under a decree to account, passed by consent on the 21st of July, 1826, the auditor reported accordingly ; to which, report the defendants excepted; and the case having been set down for hearing, was brought before the court.
8th August, 1829.
Bland, Chancellor.
This case standing ready for hearing, and having been submitted without argument by the plaintiffs’ solicitor, and no one appearing for the defendants, according to the rule, before the close of the sittings of the term, the proceedings were read and considered.
From the position taken by the plaintiffs, it becomes necessary to inquire what were the circumstances under which Alexander B. Hanna conveyed this property in trust for the benefit of his wife and children. His trade, pursuits, and pecuniary condition, are not clearly described in the pleadings; nor has it been distinctly set forth what was the value of this donation to his wife and children, compared with the whole property he then held, and the amount of the debts he then owed. But taking the pleadings and proofs together, it appears, that Alexander B. Hanna was by trade a boot and shoemaker; and, on the 22d of July, 1817, exclusively engaged in that calling; that he held some property, at that time, is certain; but the particulars and value of it are not clearly shewn. About that time he lent money; but the lending of money is, in itself, no clear evidence of his solvency to that or any other amount. It appears that in the year 1818, he held lots of ground, which he sold for $1300 ; and that, on the 22d of July, 1817, he owed debts, which are still unpaid, to the amount of $1267. It is in proof, that the mortgages were satisfied by money, or means provided by Alexander B. Hanna, after he became embarrassed, and a short time before he obtained the benefit of the insolvent laws. A part of the money lent by JYiles, the witness, was paid by him to Warner, the trustee. From the deposition of JYiles, and from other testimony, it appears, that the donation thus formally made, by the conveyance of the 22d of July, 1817, by Alexander B. Hanna, to his wife and children, was not cleared of all incumbrance, and perfected, until he had fallen into difficulties, and was upon the eve of applying for the benefit of the insolvent laws. Alexander B. Hama says in his answer, that the consideration of *33 the conveyance of the 22d of July, 1817, was the fortune of his wife, and an agreement that it should be settled on her for her separate use, but there is no proof to that effect.
There are many cases, reported in the books, which speak in general terms of a voluntary conveyance of property for the benefit of a wife and children being void against creditors,' where it appears that the grantor was indebted at the time. From which it seems to have been inferred, that the being indebted, at all, at the time, in any sum, however small, was sufficient to vacate the conveyance ; that the being at all indebted, raised such a legal presumption of fraud, as could not be repelled by any consideration arising from the amount of the debts, or the extent of the property conveyed, or the circumstances of the party.- - .-But, in those cases, other circumstances rendered it unnecessary to take into consideration the value of the property conveyed, in comparison with the then'amount of the debts and estate of the grantor, as an evidence that the voluntary conveyance had been made with an intention to defraud creditors, (c).
It is laying down the doctrine much too large, to say, on the one hand, that all voluntary conveyances are void, if the grantor be at all indebted at the time; and, on the other, that they are good, if he be not at the time actually insolvent. The true rule, by which the fraudulency or fairness of a voluntary conveyance is to be ascertained, in this respect, is founded on a comparative indebtedness ; or, in other words, on the pecuniary ability of the grantor, at that time, to withdraw the amount of the donation from his estate, without the least hazard to his creditors, or in any material degree lessening their then prospects of payment, (d)
Where a parent, who was worth at the time seven or eight thousand pounds, and in prosperous circumstances, made a gift to his daughter of a piece of property worth no more than seven hundred pounds, the conveyance, although merely voluntary, and without any valuable consideration, was deemed valid. (e) On *34 the other hand, where a father, who had not been legally declared insolvent, but was in embarrassed and sinking circumstances, made a voluntary conveyance of a considerable proportion of his property to his child, it was deemed void against his creditors; (f) and so too, where such a conveyance was made by one not then indebted; but with a view to his becoming indebted, it was deemed fraudulent. (g) For it has been long settled, that when a man, being greatly indebted to sundry persons, makes a gift to his son, or one of his blood, without consideration, but only of nature, the law intends a trust between them; (h) and this rule is the same both at law and in equity, (i) It is this presumed trust that affords the evidence of an intended fraud against creditors; because it is perfectly evident, that a man who is greatly indebted, cannot, nor ought not, to be allowed to reserve for his own use, or to give away his property to the prejudice of his creditors — and consequently no donation can be permitted to stand against them, where it is at all doubtful, whether or not the remaining property of the grantor will be sufficient to satisfy all his debts, (j) although the fact of the grantors being totally insolvent at the time, would be cpnclusive evidence of the fraudulent character of the conveyance ; yet his being at the time indebted in some small amount, compared with his property and circumstances, and the value of the donation, would not, of itself, and alone, affect the validity of the conveyance; because every man must be indebted for the common bills of his house, though he pays them every week. (k)
In the case under consideration, it appears that Alexander B. .Hanna was a tradesman, in no very extraordinary affluent circumstances ; his household furniture formed a considerable part of his estate, even according to his own reckoning; and, counting up his whole fortune, the house and lot, in controversy, formed a large and important portion of it; yet with debts, then due and still unpaid, amounting to between twelve and thirteen hundred dollars, he made this voluntary conveyance of that very large and important portion of his estate, in trust for the benefit of his wife and children ; which donation, however, he had not finally perfected, by *35 clearing it of all incumbrances, until after he became much embarrassed in his pecuniary affairs, and just before his legally avowed insolvency. I am, therefore, perfectly satisfied, that this deed of the 22d of July, 1817, must be deemed altogether fraudulent and void as against the creditors of the defendant Alexander B. Hanna.
These plaintiffs represent, as well those who were creditors of Alexander B. Hanna at the time he executed the deed of the 22d of July, 1817, as those who had become so since that time, and prior to his obtaining the benefit of the insolvent laws. Upon the principle, that an estate obtained by fraud can only be vacated by him who has the prior right; (l) it has been settled, as a general rule, with some few exceptions, that no creditor can have a voluntary conveyance set aside, on the ground of its having been made to his prejudice, unless he was a creditor at the time the conveyance was made. But it has also been long well established, that where a voluntary conveyance has been vacated for the benefit of those who were creditors at the time, all subsequent creditors may be let in to participate of the funds, (m)
Hence, in this case, although there are only a portion of the creditors, represented by these plaintiffs, at whose instance this bill could have been originated and sustained for vacating this deed of the 22d of July, 1817; yet on its being annulled, all the others must be allowed to come in and partake of the benefit of the decree ; and the proceeds must be apportioned among them in due course of distribution, according to the provisions of the insolvent laws.
The bill also claims an account of the rents and profits of this property during the time it has been thus unlawfully withheld from these plaintiffs, under the pretext of this fraudulent conveyance. This right to rents and profits, it is evident, arises as a necessary consequence of the judgment, that this deed of the 22d of July, 1817, is void, as against the creditors represented by these plaintiffs ; from whose use, the property has been unjustly withheld from the time Alexander B. Hanna applied for the benefit of the insolvent laws; at which time all his property vested in these plaintiffs, and ought to have been surrendered and delivered up to them *36 accordingly, as trustees for the benefit of his creditors. I shall, therefore, direct that this property be sold for the benefit of all the creditors, represented by these plaintiffs; and further, that an account be taken of its rents and profits, to the end, that those who have received them may be ordered to pay over the amount to these plaintiffs, to be applied in like manner, for the benefit of the creditors they represent.
Decreed, that the bill of complaint, as against the defendant Frederick G. L. Burking, be, and the same is hereby taken pro confesso ; that the said conveyance in the proceedings mentioned, bearing date on the 22d of July, 1817, be, and the same is hereby declared and deemed to be fraudulent, and absolutely null and void against the creditors of the defendant Alexander B. Hanna, for whose use these plaintiffs sue — and that the property in the proceedings mentioned be sold; that John Scott, be, and he is hereby appointed trustee to make the sale, &c. &e.
And it is further Decreed, that the plaintiffs are entitled to have and receive, for the use and benefit of the creditors represented by them, the full amount of the rents and profits of the property in the proceedings mentioned, from such of the defendants as shall be found to have held, used and occupied the same, from the 26th day of December, 1818, when the said Alexander B. Hanna applied for the benefit of the insolvent laws, up to the time when the said property shall have been delivered up to the plaintiffs, or shall be sold by the said John Scott, who has been hereby appointed trustee to make sale thereof; therefore to enable the court correctly to ascertain and specify the whole amount of the rents and profits to which these plaintiffs are so entitled as trustees; it is Ordered, that this case be, and the same is hereby referred to the auditor, with directions to state an account accordingly, from the pleadings and proofs now in the case, and from such other proof as may be laid before him. And the parties are hereby authorized to take testimony in relation to the said account of the rents and profits, before any justice of the peace, on giving three days notice as usual, provided, that the said testimony be returned and filed in the chancery office, within twenty days after the day on which the trustee, John Scott, shall have made and filed his report of the sale of the said property.
And it is farther Decreed, that the said report of the auditor filed on the 13th of March, 1827, so far as the same is in any manner at variance with this decree, be, and the same is hereby set aside and rejected; and the residue thereof is hereby affirmed.

 Milf. Plea. 105. Le Texier v. The Margravine of Anspach, 15 Ves. 164.

 Pow. Mort. by Covin. 295. n.; Williamson v. Wilson, 1 Bland, 422. Hannah K. Chase’s case, 1 Bland, 213.

 Shaw v. Standish, 2 Vern. 326. Jones v. Marsh, Forrest, 64. Russel v. Hammond, 1 Atk. 13. Walker v. Burrows, 1 Atk. 93. Stileman v. Ashdown, 2 Atk. 481. Middlecome v. Marlow, 2 Atk. 520. White v. Sansom, 3 Atk. 412. Townshend v. Windham, 2 Ves. 10. Stephens v. Olive, 2 Bro. C. C. 90. Battersbee v. Farrington, 1 Swan. 113. Richardson v. Smallwood, 4 Cond. Chan. Rep. 262.

 Lush v. Wilkinson, 5 Ves. 387. Peigne v. Snowden, 1 Desau. 591. Tunno v. Trezevant, 2 Desau. 270,

 Jacks v. Tunno, 3 Desau. 1.

 Croft v. Townsend, 3 Desau, 231; Broadfoot v. Dyer, 3 Man. 350; Chamberlayne v. Temple, 2 Rand. 384.

 Stileman v. Ashdown, 2 Atk. 481; Richardson v. Smallwood, 4 Cond. Chan. Rep. 262

 Twyne’s case, 3 Co. 81.

 Russel v. Hammond, 1 Atk. 14.

 Walker v. Burrows, 1 Atk. 93; Taylor v. Jones, 2 Atk. 602.

 Lush v. Wilkinson, 5 Ves. 387; Kidney v. Coussmaker, 12 Ves. 155; Nunn v. Wilsmore, 8 T. R. 529.

 Twyne’s case, 3 Co. 83.

 Walker v. Burrows, 1 Atk. 93; Lush v. Wilkinson, 5 Ves. 386 n.; Kidney v. Coussmaker, 12 Ves. 156 n.; Richardson v. Smallwood, 4 Cond. Chan. Rep. 262,